MARY R. WRIGHT et al., as Trustees under the Will of JAMES H. WRIGHT, Deceased, Respondents, *v.* MARY R. WRIGHT et al., Defendants, NEW YORK PUBLIC LIBRARY, Respondent, and KNICKERBOCKER HOSPITAL, Appellant.

**Testamentary trust — gift of remainder of residuary estate to a library — consolidation of such library with a municipal public library and surrender of its charter before termination of the trust estate — legacy to library did not vest on death of testator and library having ceased to exist before life estate terminated, the legacy lapsed and became property as to which testator died intestate and passed to his heirs and next of kin.**

1. The will of testator provided that one-third of his residuary estate should be held in trust during the life of a named beneficiary. After her death and after payment of certain specific bequests he directed that a certain sum be paid from this portion of his residuary estate to the Washington Heights Library in the city of New York upon condition that it should be maintained at all times as a free circulating library. The rest of the one-third so bequeathed he directed to be given an institution of which the defendant, the Knickerbocker Hospital, is the successor. An act was passed (L. 1901, ch. 57) whereby it was in substance provided that any corporation carrying on a library in the city of New York might convey and transfer all of its property to the New York Public Library on such terms, conditions and limitations as might be agreed upon between the two parties; also that the regents might " accept a surrender of the charter of the library corporation so conveying its property, and forever discharge its directors or trustees from their trusts in the premises," also that " any devise or bequest contained in any last will and testament made to any corporation conveying its property under the authority of this act, whether made before or after such conveyance, shall not fail by reason of such conveyance, but the same shall enure to the benefit of " the New York Public Library. After the passage of this act and before the expiration of the foregoing life trust, the Washington Heights Library took proper steps to transfer its property to the New York Public Library and surrender its charter, and subsequently the board of regents in accordance with the provisions of the statute accepted a surrender of the charter of the former library corporation.

The sum bequeathed to the Washington Heights Library is claimed by the New York Public Library under the residuary clause. *Held,* that the bequest in favor of the Washington Heights Library did not vest on the death of the testator; and that before that corporation became entitled to its legacy under the will it had absolutely ceased to exist and the legacy, therefore, lapsed and did not pass to the New York Public Library as its successor under the foregoing proceedings. (*Matter of Bergdorf,* 206 N. Y. 309, distinguished.)

2. While as a general rule a residuary clause will include and be applicable to lapsed legacies, it is not the rule in respect of a residuary clause where the legacy which has failed and lapsed was itself part of a residue. In such case, on failure of the intended legacy of part of the residuum, the part as to which disposition has failed will go as in case of intestacy, and the residuum passing under the residuary clause will not be augmented by a "residue of a residue." Hence, the lapsed legacy does not fall into the residuum of the third residuary portion and does not pass under the residuary clause applicable to that portion to the appellant Knickerbocker Hospital, but becomes property as to which the testator died intestate and passes to his heirs and next of kin.

*Wright* v. *Wright,* 173 App. Div. 966, affirmed.

(Argued December 12, 1918; decided January 14, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1916, affirming a judgment in favor of defendant, respondent, entered upon the report of a referee in an action brought to settle judicially the accounts of the plaintiffs as trustees under the will of James H. Wright, deceased.

*Eli J. Blair* and *Frank H. Platt* for appellant. The legacy under review was intended for the Washington Heights Library and not the New York Public Library, Astor, Lenox and Tilden Foundations. This was testator's intent as evidenced by his will and all the surrounding circumstances. (*Matter of Thompson,* 217 N. Y. 111; *Matter of Briggs,* 180 App. Div. 752; *Lewis* v. *Palmer,* 167 N. Y. Supp. 1053.) The legacy in issue could not

vest in the Washington Heights Library until the date of the death of the life tenant. The said Washington Heights Library having become defunct before that date, the legacy lapsed. (*Matter of Tamargo*, 220 N. Y. 225; *Matter of Wells*, 113 N. Y. 396; *Union Trust Co.* v. *Thompson*, 87 Misc. Rep. 31; *Sherman* v. *Richmond Hose Co.*, 101 Misc. Rep. 62; *Trust Co. of America* v. *United Box Board Co.*, 213 N. Y. 334; *Godwin* v. *Liberty-Nassau Building Co.*, 144 App. Div. 164; *Matter of Bain*, 104 Misc. Rep. 508; *Booth* v. *Cornell*, 2 Redf. 261; *Crum* v. *Bliss*, 47 Conn. 592.)

*George L. Shearer* for defendant, respondent. The conveyance by the Washington Heights Free Library to the New York Public Library effected a consolidation of the two corporations. (*L. & N. R. R. Co.* v. *Kentucky*, 161 U. S. 677; *Hale* v. *C. R. Co.*, 161 Mass. 443; *McVickar* v. *Ross*, 55 Barb. 247; *Hurd* v. *N. Y. & C. S. Laundry*, 29 Misc. Rep. 183; *Montgomery Co.* v. *Boring*, 51 Ga. 582; *Chicago Ry. Co.* v. *Ashling*, 160 Ill. 373.) By express provision of law the New York Public Library is entitled to the legacy given by Mr. Wright's will. (L. 1901, ch. 57.) The legacy to the Washington Heights Library vested at the testator's death. (Cons. Laws, ch. 50, § 59.) If the legacy to the library had lapsed, the Knickerbocker Hospital would not be entitled to that legacy. (*Kerr* v. *Dougherty*, 79 N. Y. 327; *Matter of Hoffman*, 201 N. Y. 247; *Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86.)

HISCOCK, Ch. J. The questions which are presented to us upon this appeal arise under and in connection · with the will of one Wright. For several years before his decease Mr. Wright lived in the territory known as Washington Heights. While this was located within the limits of New York city it was really a community by

itself, having local and distinct interests and institutions. Mr. Wright, who was a man of large means, became interested in at least two of these institutions which are the contending parties upon this appeal. These were the Washington Heights Library, a corporation of which the name was subsequently changed to that of Washington Heights Free Library, and the Manhattan Dispensary, a corporation of which the name was subsequently changed to that of Knickerbocker Hospital. Without going too much into details it may be stated generally that down to and for several years after the death of Mr. Wright the former institution maintained a public library which possessed as one of its features that of free circulation of books in the community in question. Mr. Wright seems to have been a contributor to the support of these institutions during life and he attempted by his will to make generous provision for their support after his death.

He died in 1894 and thereupon his will was admitted to probate. It disposed of a large amount of property and most of its provisions are not of any consequence in this discussion. After making many specific bequests he made provisions which present the questions now under consideration. He provided that in case he died without issue, which was what happened, his residuary estate after the above bequests should be divided by his executors into three parts and he provided for the disposition of the third of these residuary parts as follows:

" My executors and trustees shall hold the remaining one-third part of my residuary estate in trust to receive the rents, issues and profits thereof during the life of my said sister (duly designated in the will) and to pay the same to her or in case of her incapacity to apply the same for her personal and exclusive use, and after her death either after, before or with me, to pay or apply such income and principal as follows (and then after various specific bequests):

" (g) I direct my executors and trustees to pay and deliver to the Washington Heights Library, in the City of New York, upon the condition that it shall be maintained at all times as a free circulating library, the sum of one hundred thousand dollars.   *   *   *

" (i) All the rest, residue and remainder of the said one-third part of my residuary estate, shall be given and delivered to the Manhattan Dispensary   *   *   * the principal of such sum to be kept invested and the income thereof to be maintained as a permanent investment during the continuing operation of the said Dispensary,   *   *   *."

In 1892, or two years before the testator's death, chapter 541 of the laws of that year was passed, permitting the consolidation of library corporations in the city of New York. Provision was made for the manner in which consent to such consolidation was to be obtained from directors or trustees and stockholders in case there were any; that on completion of the consolidation all manner of rights and privileges and every species of property theretofore belonging to the separate companies should be deemed to be transferred to and vested in the new corporation; that rights of creditors of the individual companies should not be impaired but should become liabilities of the consolidated company and that pending suits should not be affected. In 1894 and after the death of the testator an amendment to this act was adopted wherein and whereby the express attempt was made to prevent the abatement of legacies and bequests to a library corporation entering into such a consolidation and to preserve the same for the benefit of the consolidated corporation.

The New York Public Library was organized by what amounted to a consolidation of the Astor, Lenox and Tilden Libraries under the name New York Public Library, Astor, Lenox and Tilden Foundations. In

1901 and several years after the will of the testator had become effective an act was passed, being chapter 57 of the laws of that year, which is of supreme importance to respondent's claim and whereby it was in substance provided amongst other things that any corporation carrying on a library in the city of New York might convey and transfer all of its property to said New York Public Library on such terms, conditions and limitations as might be agreed upon between the two parties, provision being made for the manner in which this agreement should be authorized and executed; also that the regents of the university on being satisfied that any such library corporation had conveyed all of its property to the said New York Public Library under the authority of such act might " accept a surrender of the charter of the library corporation so conveying its property, and forever discharge its directors or trustees from their trusts in the premises; " that the New York Public Library should have power to hold and enjoy the property so conveyed to it and power to dispose of the same; also that " any devise or bequest contained in any last will and testament made to any corporation conveying its property under the authority of this act, whether made before or after such conveyance, shall not fail by reason of such conveyance, but the same shall enure to the benefit of " such New York Public Library.

Some time after the passage of this act and before the death of the testator's sister, who as already stated had a life interest in the residuary part from which the bequest to the Washington Heights Library was to be paid, said latter corporation took proper steps under the provisions of said act of 1901 to transfer its property to the New York Public Library and surrender its charter. It executed a proper and effective conveyance of its property to the latter under an agreement whereby that corporation in effect undertook to maintain in the

region known as Washington Heights a public library such as had theretofore been maintained by the Washington Heights Library, and subsequently on proper proof of this conveyance and agreement the board of regents duly and in accordance with the provisions of said statute accepted a surrender of the charter of said former library corporation. Thereafter the sister, who was the life beneficiary, having died, the question arose concerning the disposition of the bequest of one hundred thousand dollars by the terms of the will made payable to the Washington Heights Library. It was and is contended by the Knickerbocker Hospital that said library corporation before the bequest to it had in any manner vested or become payable had ceased to exist by reason of the proceedings referred to and that, therefore, the legacy to it lapsed and passed under the residuary bequest to the hospital. The New York Public Library on the contrary contends, and with it thus far the courts have agreed, that under the act of 1901 and the steps taken in pursuance thereof by and between it and the Washington Heights Library the bequest has been preserved and passes to it as in some manner the successor to the Washington Heights Library. With this view we are unable to agree.

Some attempt, rather half-hearted as it seems to us, is made to argue that the bequest in favor of the Washington Heights Library vested on the death of the testator and that payment of it was only postponed until the death of the life beneficiary. If this were so it would of course be a complete answer to the claim of the hospital and would clearly and fully sustain the judgment which has been rendered. It seems to us very clear, however, that the legacy did not thus vest. The only bequest to the Washington Heights Library was by means of a trust with a direction " to pay and deliver " to it after the death of the life beneficiary under the trust.

There are in the will no words or provisions which directly or indirectly import a present or vested gift or which indicate such an intent. The testamentary disposition is to the trustees in trust to collect the rents, issues and profits of this portion of the residuary estate during the life of the testator's sister and to pay the same to her and " after her death either after, before or with me to pay or apply such income and principal as follows," and then after other clauses the direction to the executors and trustees is to pay and deliver to the library as already indicated. Under these circumstances we have the simple case, free from complications, where there is no gift but by direction to trustees to pay at a future time, and in such a case it is perfectly well settled that the legacy will not vest in the beneficiary until the time for payment arrives. (*Warner* v. *Durant*, 76 N. Y. 133; *Smith* v. *Edwards*, 88 N. Y. 92, 109; *Delafield* v. *Shipman*, 103 N. Y. 463; *Shipman* v. *Rollins*, 98 N. Y. 311; *Rudd* v. *Cornell*, 171 N. Y. 114.)

Thus it results on this branch of the case that respondent is compelled to sustain the proposition that by virtue of the statute of 1901, passed long after testator's will had taken effect, and the acts performed thereunder, the New York Public Library has been substituted as a legatee for the Washington Heights Library and is entitled to the legacy by the will specifically and exclusively given to the latter. This proposition, that the legislature by act passed long after a will has gone into effect may provide for the substitution of some new person as legatee in the place of the one named in the will, is certainly a radical one and before we can assent to it there should be pointed out some certain and undoubted foundation upon which it may rest. In our opinion there has been an utter failure to do this in this case. Even if we should assume that with legislative aid there might be such a consolidation or merger of one corporation with

or in another as would make the latter the successor
of the former and carry to it the enjoyment of bequests
to the former, not vested at the time of merger or
consolidation, such assumption will not save the present
claim of the respondent.  In a legal sense there was no
consolidation or merger by the Washington Heights
Library with or in the New York Public Library and
the latter did not in any legal sense become the successor
of the former so as thereby to be entitled to its corporate
rights and privileges.  In a popular sense it is true that
the continuing corporation undertook to carry out, and
we will assume did carry out, the objects and duties
of the former in the way of maintaining a free reference
and circulating library in the community known as
Washington Heights.  But this was under a contract
which in no proper sense made one corporation the suc-
cessor to or embodiment of the other.  Under the statute
of 1901 the Washington Heights Library was permitted
in effect to convey all of its property to the New York
Public Library under an agreement by which the latter
undertook to discharge the functions of the former.  But
it was part of the provisions which authorized this that
after it had been done the Washington Heights Library
should be entitled to surrender its charter and become
extinct and this was what happened.  It thus came about
that before the Washington Heights Library became
entitled to its legacy under the Wright will it had
absolutely ceased to exist and the legacy had lapsed.
Between it and the New York Public Library there is
and can be no connection or succession as to this legacy
because the end of the Washington Heights Library has
not been merger or devolution into another corporation
but absolute extinction under the statute.  It seems to
be so plain as not to permit serious doubt that under these
circumstances the legislature could not permit or authorize
a new corporation to take the place of one becoming

22

extinct, for the purpose of securing a legacy vesting and becoming payable some time after the corporate death of the legatee.

The case of *Matter of Bergdorf* (206 N. Y. 309) has been cited with apparent confidence as sustaining the views which have led to the judgment thus far rendered. A reasonably careful consideration of that case, however, seems to make it plain that, so far as applicable, its authority and reasoning are entirely opposed to rather than in support of the judgment which has been rendered herein. In that case the Morton Trust Company was merged with the Guaranty Trust Company under provisions of the Banking Law which, amongst other things, provided that upon such a merger all the rights, franchises and interests of the corporation merging should be deemed to be transferred to and vested in the corporation into which it was merged. Under the will there involved the Morton Trust Company had been appointed an executor and the question was whether the right to this executorship passed to the Guaranty Trust Company into which the Morton Trust Company had been merged. In that case the statute authorizing such a merger and providing for the transfer of rights, privileges and property above referred to had existed for many years and the merger itself took place a year before the testator died and his will went into effect. Under these circumstances it was held by the court, concurring in the opinion of Judge COLLIN, that the Morton Trust Company did not continue to exist within or as a part of the Guaranty Trust Company and the two were not identical; that as a legal being, a corporate entity, the Morton Trust Company retained the one activity and power provided by the statute of suing and being sued and that otherwise it was non-existent, and certainly if that was true in that case it is true in this case where by action under the statute the Washington Heights Library has absolutely surrendered its charter

and ceased to exist. Judge COLLIN then, however, pointed out that the right to make testamentary disposition was not an inherent one but was conferred by statute and subject to regulation, and that, therefore, " It was within the power of the legislature to enact that a trust company, into which another trust company lawfully designated as an executor had been merged subsequent to the making and *prior to the probate of the will,* should be the transferee of the privilege or right of being the executor." (p. 316.) And throughout the opinion holding that the Guaranty Trust Company was entitled to take and administer the executorship which had originally been conferred upon the Morton Trust Company there is emphasized the fact that the statute permitting this was passed and the merger itself accomplished before the will went into effect and that the testator in making his will and enjoying the testamentary privileges conferred by the statute did so subject to the statutory provisions then under consideration. That controlling feature is lacking in this case. The general statute providing for the consolidation of library corporations as it existed at the time testator died and the substance of which has been quoted, did not authorize what has been done. Support for the judgment which has been rendered can only be sought for in the act taking effect after the probate of the will and whereby the attempt is made to substitute a new legatee in the place of the one who has been named by the testator.

I now come to the remaining question which arises whether the lapsed legacy intended for the Washington Heights Library falls into the residuum of the third residuary portion which we have been considering and passes under the residuary clause applicable to that portion, to the appellant Knickerbocker Hospital, or whether it becomes property as to which the testator has died intestate and which should pass to his heirs and next

of kin. In the latter case of course the appellant can gain no advantage from the lapse of the legacy.

It is the familiar rule that a general residuary clause will include and be applicable to lapsed legacies. This rule also governs devises of real estate which fail. So anxious is the law to avoid intestacy that where the language of a residuary clause is ambiguous the courts will give it a broad rather than a restricted interpretation so as to include such legacies. (*Lamb* v. *Lamb*, 131 N. Y. 227, 234.)

While, however, this is the general rule in respect of residuary clauses it is not the rule in respect of a residuary clause where the legacy which has failed and lapsed was intended to be a disposition of part of the residue. In such a case, on failure of the intended legacy of part of the residuum, the part as to which disposition has failed will go as in case of intestacy and the residuum passing under the residuary clause will not be augmented by a " residue of a residue." The reason for this distinction in most cases is not very apparent, satisfactory or convincing. The one most often given is based on the assumption that it could not have been the intent of the testator in disposing of his residuary estate that a bequest of the residue thereof should be augmented by the lapse of other bequests from such residuum. (2 Redfield on Wills [2d ed.], 118, 119.) While this course of reasoning has some apparent force where the residuum consists of a definite sum or specific property and where it might be assumed that the testator by the residuary clause intended to make a definite bequest, it is difficult to appreciate the force of the reason in such a case as the present one where the residuum to be disposed of consists of a certain portion of an estate of unknown value and where there seems to be no good ground for withholding application to the residuary clause and lapsed legacy of the principles ordinarily covering such

1919.]          Opinion, per HISCOCK, Ch. J.          [225 N. Y.]

a situation.    However, without attempting to justify this distinction as logical or reasonable in most cases we nevertheless are forced to realize that as the result of inheritance and frequent repetition the rule has become too firmly established to be disregarded.    (Redfield on Wills [2d ed.], vol. 2, pp. 117, 119; Thompson on Wills, § 308; *Page* v. *Leapingwell,* 18 Ves. 463, 465; *Wright* v. *Weston,* 26 Beav. 429; *Lloyd* v. *Lloyd,* 4 Beav. 231; *Green* v. *Pertwee,* 5 Hare's Ch. 249; *Stetson* v. *Eastman,* 84 Me. 366; *Floyd* v. *Barker,* 1 Paige, 480, 482; *Beekman* v. *Bonsor,* 23 N. Y. 298, 312; *Kerr* v. *Dougherty,* 79 N. Y. 327, 346, 347; *Hard* v. *Ashley,* 117 N. Y. 606, 616; *Booth* v. *Baptist Church,* 126 N. Y. 215, 245; *Morton* v. *Woodbury,* 153 N. Y. 243, 253; *Matter of Hoffman,* 201 N. Y. 247, 254; *Matter of Woolley,* 78 App. Div. 224.) We see no escape from it as applied to the lapsed legacy which we have been considering.    Under it, the appellant has no right to the legacy or to object to the receipt of it by the respondent even though the latter is not entitled thereto.    The ones to object were the heirs and next of kin of the testator.    Apparently they are satisfied; at least they are not here appealing.

We think that the judgment must be affirmed, with costs.

CHASE, COLLIN, CUDDEBACK, POUND and ANDREWS, JJ., concur; CARDOZO, J., concurs in result.

Judgment affirmed. .