In the Matter of the Estate of EMILY A. ZOLLIKOFFER, Deceased, and of the Estate of OSCAR F. ZOLLIKOFFER, Deceased.

Surrogate's Court, Westchester County, January 2, 1936.

*Mitchell, Taylor, Capron & Marsh* [*Clinton C. Swan* and *Joseph Trachtman* of counsel], for F. Christopher Weber and others, as executors, etc., of Emily A. Zollikoffer, deceased widow and life tenant.

*Rosenblum & Sommer*, for John W. Brewer and Talbot M. Brewer, individually and as executors, etc., of Oscar F. Zollikoffer, and for Oscar Zollikoffer Brewer and Elfriede F. Babcock, remaindermen.

*Paul G. Gravenhorst*, for Stephen M. Paulson, a legatee.

*Salter & Steinkamp*, for The Wartburg Orphans Farm School of the Evangelical Lutheran Church, a legatee.

*Allin, Tucker & Allen*, for the Young Men's Christian Association of the City of New York, a legatee.

*Cadwalader, Wickersham & Taft*, for The New York Association for Improving the Condition of the Poor, a legatee.

SLATER, S.   Oscar F. Zollikoffer executed his will on March 17, 1915.   He died July 18, 1918.   The will was admitted to probate August 5, 1918.   The gross estate was $546,723.40.   The will directed payment of debts and funeral expenses and then proceeded to give a large number of general legacies.

The thirteenth paragraph of the will is to the effect that " All the rest, residue and remainder of my estate, both real and personal, of every nature and description, I give, devise and bequeath unto my beloved wife, Emily Augusta Zollikoffer, and while desiring that my wife shall freely use and expend the whole or such part of it as she may think proper for her own comfort and enjoyment, or for such benevolent or charitable objects as she may think best, yet whatever amount of the principal of my estate is not so expended by her before her death, I direct shall be collected or otherwise converted into money and paid over as follows: " Then follow legacies from the estate unexpended by the widow amounting to about $100,000.

The thirteenth subdivision of the thirteenth paragraph gave " To the Rev. William M. Horn, provided he is at my death still the Pastor of the Evangelical Lutheran Church of the Advent, Five Thousand ($5,000) Dollars."   It appears that the Rev. William M. Horn was not the pastor of the named church at the time of the death of Oscar F. Zollikoffer.

The will further provided by the fourteenth paragraph:

" *Fourteenth.* To my nephews, John Wilmot Brewer, Oscar Zollikoffer Brewer and Talbot Brewer, and my niece, Elfriede F. Babcock, all the rest, residue and remainder of such proceeds, share and share alike, and if any of them shall have died leaving

issue, such issue shall take the share their parent would have taken if living, and if any of them shall have died without leaving issue, the share of the one so dying, shall go to the survivors."

The widow, Emily Augusta Zollikoffer, became the life tenant of the residuary estate to the extent of $312,532.66. She died April 13, 1935, leaving a will and codicils admitted to probate in the Surrogate's Court of the county of New York on May 29, 1935, and her executors are accounting in this proceeding for the property received by the widow and remaining unexpended. The executors are advised by counsel that the property comprising the residuary estate of Oscar F. Zollikoffer which came into the hands of said Emily A. Zollikoffer was impressed with a trust as to that part thereof which was not consumed by her in her lifetime for the benefit of the remaindermen named in said thirteenth and fourteenth paragraphs of the will of Oscar F. Zollikoffer.

The accountants herein have taken possession of the real and the personal property remaining in her hands and proceed herein to account for it. They ask that the will of Oscar F. Zollikoffer be construed as to the disposition which should be made by them of such real and personal property remaining in the hands of said Emily Augusta Zollikoffer as life tenant.

In the accounting proceedings in the Oscar F. Zollikoffer estate, the decree of September 30, 1920, determined that the legacy of $5,000, provided by subdivision 13 of said paragraph thirteenth of the will of Oscar F. Zollikoffer to the Rev. William M. Horn, had lapsed and became of no effect because said William M. Horn was not the pastor of the Evangelical Lutheran Church of the Advent at the time of the death of Mr. Zollikoffer. The question is whether the void legacy intended for Dr. Horn passes to certain nephews and a niece pursuant to the gift in paragraph fourteenth, or whether it becomes property as to which the testator had died intestate.

It is a familiar rule that a general residuary paragraph will include and be applicable to lapsed, or void, legacies. (*Matter of Benson,* 96 N. Y. 499; *Matter of Hoffman,* 201 id. 247.) While, however, this is the general rule in respect of residuary clauses, it is not the rule in respect of a residuary clause where the legacy which has failed and lapsed was intended to be a disposition of part of the residue. In such a case, on failure of the intended legacy of part of the residuum, the part as to which disposition has failed will go as in case of intestacy and the residuum passing under the residuary clause will not be augmented by a " residue of a residue." (*Wright* v. *Wright,* 225 N. Y. 329, 340; *Matter of Allen,* 111 Misc. 93, 121; affd., 236 N. Y. 503.)

The reason for the distinction in most cases is not very apparent, satisfactory or convincing. Without attempting to justify the distinction as logical or reasonable in most cases, the courts, nevertheless, are forced to realize that, as the result of inheritance and frequent repetition, the rule has become too fairly established to be disregarded. (*Wright* v. *Wright, supra,* at p. 341.)

The courts have said that the technical rules above stated are reluctantly enforced when tokens are not at hand to suggest an opposite intent. In *Oliver* v. *Wells* (254 N. Y. 451, 458) the testator had been careful to guard against the application of the rule. He said: " this clause to be construed and considered as the residuary clause of this my last will and testament." The court held: " The intention is thus manifest that the gift shall be a dragnet that will cover every interest not effectively disposed of otherwise." The rule was overcome.

Here, too, the token of the testator's intent is to be found in the words of his will. The testator's intent was to create a fund from which certain legacies should be paid at the death of his wife. Out of the life fund of $312,532.66 he gives money legacies of about $100,000, payable at her death. He must have had in mind the amount of his estate, and the probability that at his wife's death there would be a substantial sum left over and above the gift of the general legacies. He provided for this in paragraph fourteenth of his will and gave to his three nephews and a niece " all the rest, residue and remainder of *such proceeds,* share and share alik ." The words of meaning and intent are the words " of such proceeds." Paragraphs thirteenth and fourteenth must be construed as one thought and one paragraph. The testator, in writing them, was dealing with the entire fund that had been left in the custody of his wife for life. The $5,000 legacy to Dr. Horn, void at testator's death, had been gathered up and formed part of this fund. By testator's direction it was to be paid in part to various legatees and that which remained of the fund was to pass to nephews and a niece. At all times testator was speaking of the fund which held the void gift to Dr. Horn. The use of the words " rest, residue and remainder " in the fourteenth paragraph was unnecessary. By their use he meant a gift of the *balance of " such proceeds "* undisposed of at the death of his wife, after payment of the money legacies mentioned in the thirteenth paragraph of the will.

In legal effect, the testator's words of gift of the rest, residue and remainder " of such proceeds " is no more than if he had said " I give the balance of such proceeds " (referring to the fund held by the wife) to named nephews and a niece. If the draftsman had omitted the words " of such proceeds " in the fourteenth

paragraph of the will, we would have had a true residue, and the failing gift would have been deposited in and become a part of the residuary bequest. Either way, it appears, the nephews and niece get all.

*Matter of Woolley* (78 App. Div. 224 [1903]) is referred to in support of the claim of those asserting intestacy. This case is distinguishable from the instant case. The facts are not the same. In the instant case a residuary *fund* is created which passed to a life tenant, upon whose death the proceeds, or money, when converted, are bequeathed to several persons and the residue, or balance, of such fund passes under the fourteenth paragraph. In the *Woolley* case there was a division of the rest, residue and remainder, which was held to be the true residue. The court said: " for this contingency [meaning lapsed legacies] the testator has made no provision " and that the gift under the tenth subdivision of paragraph seventh was limited to what was specifically given them by subdivision 10. The general rule of law was applied. The fund for the wife gathered up the void legacy and retained it for her life; the gifts to be made upon her death came from such fund. The testator intended to and did make full distribution of such fund. Here is found a token of testator's intention in his words which give the rest, residue and remainder, or balance of *such proceeds* (the fund held by the wife for life), to named persons. At no time could the void legacy have fallen into intestacy. In the *Woolley* case the lapsed legacies were not picked up and retained by the testator, but fell out of the residuary gift by operation of law.

This construction will avoid intestacy and be consistent with the intent of the testator. The law is anxious to avoid intestacy. (*West* v. *West*, 215 App. Div. 285; *Matter of Mahlstedt*, 140 Misc. 245, 255, 256.) The testator's purpose is clear and the struggle to avoid intestacy is not desperate because of testator's own words.

I hold that the $5,000 void gift to Dr. Horn passes under the fourteenth paragraph of the will of Oscar F. Zollikoffer.

Proceed accordingly.