In the Matter of the Estate of MORRIS L. CHAIM, Deceased.

Surrogate's Court, New York County, June 24, 1938.

*Mitchell, Taylor, Capron & Marsh,* for the trustee.

*Baldwin, Todd & Young,* for objectants Samuel L. Lewis and Elliott M. Lewis.

*Maxwell Steinhardt,* for the Hebrew Technical School for Girls.

*David L. Podell,* for the Educational Alliance.

*Theodore B. Richter,* for the Young Men's Hebrew Association.

*Cardozo & Nathan,* for the Jewish Social Service Association, Inc.

DELEHANTY, S. Deceased died on October 10, 1920, leaving a will executed in 1916. Controversy has arisen concerning the disposition of part of the remainder of a trust of the residuary estate in which the widow of deceased was given a life interest. The provisions of the will pertinent to the questions raised are as follows:

" *Twenty-first.* All the rest, residue and remainder of my estate, both real and personal and wheresoever situated, of which I shall die seized or possessed or to which I may be entitled at the time of my decease, I give, devise and bequeath to The Farmers' Loan and Trust Company, a corporation organized and existing under the laws of the State of New York, having its principal place of business at number twenty-two William Street, in the Borough of Manhattan, City of New York, IN TRUST, to invest and, from time to time, in its discretion, reinvest the personal property; to collect the rents and profits of any real property, and after paying the charges of administration of said trust, to apply the net income of both said real and personal property to the use of my wife, Helen B. Chaim, for and during the term of her natural life.  *  *  *

" After the death of my said wife, I direct that my said residuary estate, and also all other parts of my property not hereinbefore disposed of, shall be equally distributed among the following:

" Hebrew Technical School for Girls, now located at Second Avenue and Fifteenth Street, in the Borough of Manhattan, City of New York;  *  *  *

" The fund so donated to each of said institutions shall be known as the ' Morris L. Chaim, Helen B. Chaim and Emilie Chaim fund.'

" *Twenty-second.* It is my will that the institutions mentioned in clause ' Fifteenth ' of my Will shall receive the legacies therein given to them in full, even though for any reason the institutions mentioned in clause ' Twenty-first ' of my Will may not be able to accept and hold the full amount of the bequests made to them in said clause ' Twenty-first,' and in the event that any of the corporations mentioned as residuary legatees shall be unable for any reason whatever to take any portion of said estate bequeathed to them by said clause ' Twenty-first ' of my Will, I direct that so much of said estate as they cannot take be transferred, conveyed and paid over to the issues surviving at the time of my said wife's death, or at my death, if I survive her, of my nephew, Jake Emil Lewis, and my niece, Henrietta Emilie Lewis, in equal shares, *per stirpes.*"

By decree of this court dated May 23, 1934, the intermediate account of the trustee was judicially settled. The widow died on

August 13, 1937. The trustee has filed its final account and has requested a determination whether the corporations named in paragraph twenty-first of the will are able to accept and hold the full amount of the bequests for their benefit in that paragraph. Samuel L. Lewis and Elliott M. Lewis are said to be the sole surviving issue, at the death of the widow, of Jake Emil Lewis, deceased's nephew, and Henrietta Emilie Lewis, deceased's niece, the two persons mentioned in paragraph twenty-second of the will. The Messrs. Lewis have interposed objections to payment to the Hebrew Technical School for Girls of any part of the principal of the trust and demand payment to them of one-fourth of the remainder on the ground that the school is unable to take the gift within the meaning of the provisions of paragraph twenty-second of the will. The charge of inability to take is based on the assertion that the school is _now_ engaged in activities other than those for which the gift was intended by deceased. The corporation has moved to strike out the answers on the ground that they are insufficient in law. The motion is supported by an affidavit of the treasurer of the corporation. In testing the sufficiency of the answers on a motion of this nature only the allegations of the answer may be considered and the statements in the affidavit of the treasurer of the corporation must be disregarded. The facts concerning the history and activities of the corporation as set forth in the answer and as hereinafter summarized must, for the purpose of the motion, be deemed true.

The Hebrew Technical School for Girls was incorporated under the laws of New York on May 23, 1884, under the corporate name Louis Down Town and Sabbath School. Its objects and purposes as stated in its certificate of incorporation were: " To elevate the character and condition of the children of the Jewish poor in the City of New York, by ethical, religious and secular instruction; and to relieve their physical wants by furnishing them with clothing and refreshment." Thereafter on December 5, 1888, the name of the corporation was changed to Louis Down Town Sabbath and Daily School. The reasons for the change as stated in the application therefor were that the corporation " when it was first created and organized, intended to be and was only a sabbath school, but subsequently became and is now also a daily, technical school, by reason whereof its present name has become incongruous in that it does not imply fully the character and purposes of the corporation." On October 31, 1895, the corporation was authorized to assume its present name. In the application for the change then made it is stated that the corporation was formed originally for the secular and religious instruction and education of the Jewish poor

of the city of New York; that in 1888 its purposes were modified and enlarged so as to embrace daily instruction and in technical branches such as dress cutting, stenography, typewriting, cooking, designing and needle work, in addition to instruction in religious branches originally given. The petition stated in substance, among other things, that the corporation had enlarged and extended the scope of its work in the technical branches referred to very largely so that this branch had become the most important feature of its work and the instruction in religious branches once weekly had become a subsidiary purpose. It was stated that a change of name was sought to indicate the scope of the activities of the corporation. On February 19, 1902, the certificate of the corporation was amended so as to provide that " the particular business and objects of the said Hebrew Technical School for Girls are and shall be to elevate the character and improve the condition of Hebrews and others of the City of New York by proper Technical and other instruction, to establish and maintain schools for the purpose, to elevate the character of the Jewish poor by proper Ethical and Religious instruction, and to relieve their physical wants by furnishing them with clothing and refreshment." In that same year the corporation commenced the erection of a school building in the city of New York. From 1904, when the construction of the building was completed, until June 30, 1932, the operation and maintenance of the school constituted the sole activity of the corporation except that it endeavored to find employment for its graduates. During the year 1932 the corporation leased the building and equipment to the board of education. In 1937 the corporation conveyed the premises to the board of education.

The answers allege that the corporation in 1932 ceased to perform any of the business or to pursue any of the objects authorized by its certificate and has ceased all instruction, technical or otherwise, of Hebrews or others, and has ceased to maintain a school for that purpose; that it has ceased to furnish ethical or religious instruction to the Jewish poor and has not for many years, if ever, attempted to relieve the physical wants of the Jewish poor by furnishing them with clothing and refreshment; and that it has incapacitated itself from furnishing any ethical, religious or secular instruction by disposing of its building and equipment. The answers allege further that the only activities in which the corporation has engaged since the transfer of the school and equipment have been the granting of scholarships and the operation of a so-called " Hebrew Technical School Employment Bureau;" that the scholarships so granted are not confined to technical or commercial schools

but have been granted also for general academic instruction; that the employment bureau as originally established was limited to the assistance of graduates of the school but since 1936 applications have been accepted from students other than graduates. It is further alleged that the corporation has abandoned all of the activities and functions in which it was engaged at deceased's death and has since engaged in new and different activities not included in nor contemplated by its charter and not of a character which deceased intended to benefit; that the activities and functions performed by the corporation since on or about June 30, 1932, are beyond the scope of the powers granted by its certificate; that the corporation has so altered its functions and activities as to be wholly disqualified from taking any portion of the estate of deceased; and finally that by reason of the inability of the corporation to take the objectants are entitled to the portion of the estate which otherwise would have been received by it.

The grounds upon which the corporation moves to strike out the answers may be stated as follows: (1) That its present activities are clearly authorized by its charter; (2) that the objection that its present activity is *ultra vires* may be raised only by the State; (3) that the corporation is able to take because it is not dissolved or dormant; (4) that the gift vested in the corporation on the death of deceased and any change in subsequent activity did not constitute a gift over to objectants; (5) that the decree settling the intermediate account of the trustee is *res adjudicata* on the issues, if any, raised by the answers.

The plea of *res adjudicata* may be overruled without extended comment. While the corporation may have been named in the prior petition and account as a remainderman its status was not then in question and was not litigated. Nor was a determination of its status necessary to the settlement of that account.

First consideration should be given to the question whether the gift vested in the corporation at the death of deceased and if so whether because of that fact the objectants have no standing to question the use of the fund. The objectants assert that the remainder was not intended to vest until the date of death of the life beneficiary. They urge that the will contains no words of present gift to the corporation but that the words used by deceased are the equivalent of a direction to divide and pay over at the death of the life beneficiary. They point to the provisions of paragraph twenty-second of the will in which deceased directs that so much of the estate as the corporation would take be transferred, conveyed and paid over to the issue of his nephew and niece

" at the time of my wife's death," asserting that the quoted phrase indicates an intention that there was to be no vesting until that time had arrived. *Wright* v. *Wright* (225 N. Y. 329) is cited in support of the argument so made. In that case the gift was upon condition that the corporate legatee should at all times be maintained as a free circulating library. The legatee had ceased to exist as a library prior to the death of the life beneficiary. While the decision in that case refers to the divide and pay over rule its value as a precedent on the question of the time of vesting of a remainder interest is now in serious doubt. In *United States Trust Co.* v. *Taylor* (193 App. Div. 153, 159; affd., 232 N. Y. 609) the Appellate Division stated: " The contention of the respondent that the *Embree* case [9 App. Div. 602; affd., 154 N. Y. 778] has in effect been overruled by the Court of Appeals in *Wright* v. *Wright* (225 N. Y. 329) is not sound. The estate in the *Wright* case was contingent upon a condition that ' it [the library] shall be maintained at all times as a free circulating library.' Such a bequest was clearly conditional and did not come within the definition of a vested estate as stated in section 40 of the Real Property Law, which reads as follows: ' A future estate * * * is vested when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain.' "

In any event this is not a case in which the only words of gift are those contained in the direction to divide and distribute. Deceased refers in paragraph twenty-second of the will to " any portion of the estate *bequeathed* to " the corporation in paragraph twenty-first. The use of the word " bequeathed " indicates that deceased considered the gift in paragraph twenty-first as having already been made. It is the equivalent of his having said " any portion of the estate *which I have given to* " the corporation. The corporation here was in existence at the date of deceased's death. A remainder gift to named persons in existence at the death of a testator imports an immediate vesting. (*Matter of Gardner*, 140 N. Y. 122; *Matter of Soy*, 143 Misc. 217, and cases cited.) The text of clause twenty-second which speaks of possible inability of the claimed institutions to take the legacies " in full " or to accept " the full amount of the bequests made to them " indicates that deceased may have had in mind some statutory limitation in the charters of the corporations upon the quantum of property which they might receive; or possibly a limitation upon his own action

under section 17 of the Decedent Estate Law. Nothing in the text of the will indicates that deceased concerned himself with any of the ideas now urged by objectants.

Assuming for argument that the present activities of the corporation are not authorized by its charter, that fact has no bearing on whether or not the gift here vested on death. In *Matter of Harrington* (243 App. Div. 235) there was a gift of property to a niece of the testatrix for life with remainder to " the Rome Hospital and the managers and trustees thereof by whatsoever name known in trust, however, to build with the said moneys and proceeds an annex or addition to the said Rome Hospital building in memory of my late husband, George A. Harrington, and for no other use or purpose. Said annex or addition to be known as ' Harrington Annex ' or ' Harrington Addition.' " The testatrix died in 1903. The life beneficiary died in 1932. The Rome Hospital was in existence at the death of deceased. The corporation operated the hospital until 1929 when it leased all of its real and personal property to the city of Rome. The surrogate in that case held that the legacy had lapsed. The Appellate Division in reversing the surrogate said (at p. 238):

" Then how did the legacy lapse? ' A lapsed legacy is one which has never vested or taken effect.' (*Booth* v. *Baptist Church*, 126 N. Y. 215, 242.) And where a legacy has legally lapsed, the doctrine of *cy pres* cannot be invoked to save the gift. This doctrine is laid down in cases where the gift is to a charitable institution which never existed, has ceased to exist or has not legal capacity to take the gift. (*Mount* v. *Tuttle*, 183 N. Y. 358; *Ely* v. *Megie*, 219 id. 112; *Wright* v. *Wright*, 225 id. 329.)

" But the will, in the instant case, took effect in 1903, at the date of the death of the testatrix. The Rome Hospital was then in existence, and, as a legal entity, is still in existence, and then was, and still is, legally capable of accepting this gift. It functioned as a hospital until 1929. Indeed it still performs some of the functions of a hospital, the business for which it was created. The corporation still administers certain trust funds, as the record shows. So the legacy never lapsed. The remainder of the gift in question, after the life estate was carved out, vested in the Rome Hospital, the charitable corporation, which is still in existence and still capable of administering the trust."

The court holds that the gift here vested in the corporation at the death of deceased. (*Matter of Harrington, supra; Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462; *Matter of Herts*, 165 Misc. 738.) Since the corporation was in existence at the death of deceased and

was then able to take the gift and since the gift vested at that time the condition upon which the gift over was to take effect did not occur. The gift over was to take effect only in the event that the corporation could not take. There is no provision in the will for a gift over in the event of the non-use or misuse or alienation of the fund and none can be implied. (*Sherman* v. *Richmond Hose Co., supra.*) A charitable gift once vested does not become the property of the heirs or legatees of the testator because of misuse or non-use of the property unless there is an express provision for reverter or a gift over in the event such misuse or non-use should occur. (*Stewart* v. *Franchetti*, 167 App. Div. 541; *Authors Club* v. *Kirtland*, 248 id. 82, 86; *Matter of Swan*, 237 id. 454; affd., *sub nom. Matter of St. John's Church of Mt. Morris*, 263 N. Y. 638; *Van de Bogert* v. *Reformed Dutch Church*, 128 Misc. 603.) Even if it be assumed, therefore, that the corporation would by use of the fund in its present activities be devoting it so as to constitute a misuse or non-use the objectants can claim no interest in the fund because of that fact. Since the objectants have no interest in the fund assuming all of the allegations of fact in the answers to be true the answers are insufficient in law and should be stricken out.

The conclusion here reached makes unnecessary consideration of any other of the points raised. The trustee may properly pay over to the corporations named in the will. Whether the Attorney-General may think it advisable to inquire into the use of the fund which reaches the Hebrew Technical School for Girls need not concern the trustee. While a ruling on the subject is not essential to a determination of this case there appears to the court to be no doubt that the granting of scholarships by the school is in full accord with its charter provisions as they existed from 1902 through 1916 when the will was dated and beyond 1920 when deceased died. At that time the charter said that " the particular business and objects " of the school included the elevation of the character and the improvement of " the condition of Hebrews and others of the City of New York by proper technical and other instruction, to establish and maintain schools for the purpose." The granting of scholarships clearly effectuates the stated purpose. In making this comment *obiter* the court has referred to the affidavit of the treasurer of the corporation but notes once more that the ruling of the court is made on a basis which makes unessential the ascertainment of the facts respecting the uses to which the funds of the school are presently being put.

Submit, on notice, order granting motion to dismiss the answers.