In the Matter of the Accounting of WILLIAM H. ROYCE et al., as Executors of GABRIEL WELLS, Deceased.

Surrogate's Court, New York County, October 21, 1949.

*John Patrick Walsh* and *Ben Herzberg* for executors, petitioners.

*Benedict Wolf* for Adalbert Balassa, as Counselor of Consular Administration in charge of the Consulate General of the Hungarian Republic on behalf of Erzsi Schmiedl and others, respondents.

*Pliny W. Williamson,* special guardian for Marika Szekac and another, infants, respondents.

COLLINS, S. The petitioners in this proceeding for the settlement of their account as executors seek construction of paragraphs eighth, tenth and eleventh of the will. The fact of the death of each of a number of persons whose interests in this estate arise out of or were affected by the operation of those provisions has been satisfactorily established and accordingly the decision herein made is based upon findings that the following predeceased the testator: Miklos Rohonyi, Ilonka Denes, Gorgy Szekac, Marika Szekac, Erzsebet Schwartz (named in the will as " Erzsi "), Feri Grosz, Margit Illofsky and Nanci Rohonyi.

In paragraph tenth of his will the testator directed the division of his residuary estate into five equal parts and provided in subdivision (a) thereof that his executors " pay over the first one of these parts to the children of my deceased sister *Paula Streisinger* living at Losconz, in the former Common-

wealth of Czechoslovakia after first deducting from each share the respective amounts due to my estate for money loaned by me to them in my lifetime. These amounts so deducted shall be set aside and distributed in the manner hereinafter set forth.'' Instructions for the disposition of the recapture of moneys lent by the testator are to be found in paragraph eleventh of the will: '' Eleventh: All the amounts so deducted from the respective shares bequeathed in subdivisions (a) and (d) in the above paragraph *Tenth* of this my Last Will and Testament shall be gathered in one lump sum and equally divided among all of those to whom I have made bequests in the said above paragraph *Tenth* or in the subdivisions thereof share and share alike.''

Of the three children of Paula Streisinger who survived their mother, two, Ilonka Denes and Gorgy Szekac, predeceased the testator leaving no issue. The third Istvan Szekac, is still alive. The principal question at issue arises by reason of the fact that both Ilonka Denes and Gorgy Szekac were indebted at their deaths to the testator for moneys loaned. If the legacy is regarded, as it must be, as a gift to a class the court must determine whether the only surviving member, who was not indebted to the testator, would be entitled to a full one-fifth share of the residue or whether there must be deducted from that amount the total of the unpaid loans made to Ilonka Denes and Gorgy Szekac whose deaths have deprived them of the right to share in the estate.

This will demonstrate that the prime concern of the testator was to deal with the recipients of his generosity upon a basis of parity. To achieve this result he treated loans that he had made to certain of them as advancements so that none would benefit at the expense of others. This is not to say that he intended each individual, some of whom he had grouped in classes, to take an exactly equal amount but it is apparent that he regarded the moneys he had previously loaned as augmenting the property passing upon his death and this combined total must be employed in computing the directed division into shares.

It can be demonstrated mathematically that the use of this formula will produce the result which the testator intended. To illustrate, using for the purpose figures which are not those that will be required in the actual computation, it may be assumed that the total indebtedness of Ilonka Denes and Gorgy Szekac amounted to $10,000 and that there is on hand

a total of $100,000 to be distributed on the basis of division into the five shares, A, B, C, D, and E. On this basis each share would be worth $22,000 but from share A there would have to be deducted the sum of $10,000 previously received by the members of the class. Paragraph eleventh directs that the $10,000 so deducted must be added in equal parts to the five shares mentioned with the result that there will be distributed as share A the sum of $12,000 and to each of the remaining four the sum of $22,000.

It is, of course, clear that the statutory doctrine of advancements applies only to intestate estates (Surrogate's Ct. Act, § 270; Decedent Estate Law, § 85) but it can be said with equal certainty that the " hotch-pot " device may be employed in computing the shares of legatees under a will whenever required. In *Matter of Fahnestock* (70 N. Y. S. 2d 456, affd. 273 App. Div. 767, affd. 298 N. Y. 647) this court had for construction a will dividing the testator's residuary estate into a half and three one-sixth shares. It was there held that there was to be added as a constituent of the distributable estate the total of sums described by the testator as " advancements " which had previously been given to one of the legatees. As a result the shares of the others were proportionately increased.

The fact that the sole surviving member of the class named to take under paragraph tenth (a) was not indebted to the testator has no effect upon the outcome. The testator anticipated a division of his estate into equal shares. If there were not deducted from the first of these the amounts previously loaned then parity between the shares would be destroyed. The will forbids a distribution which would increase share A at the expense of the other gifts.

In paragraph tenth (b) of the will the testator left a one-fifth share of his residuary estate to his sister Rosa with a direction that the bequest was to be paid in equal shares to her children in the event that she failed to survive him. This sister died in 1945 leaving two children, both parties to this proceeding and as a consequence their mother's share passes to them.

Aranka Dobo, to whom was given the third of the gifts of a fifth is presently alive but it has been established that Erzsi and Feri Grosz, to whom was left in paragraph tenth (d) of the will the fourth share both predeceased the testator leaving no issue. Because of the absence of a direction providing for other disposition this share passes as intestate property.

Paragraph tenth (e) of the will directs payment of the final equal share to trustees for the benefit of a niece, Margit Illofsky for life with remainder over to the decedent's next of kin. The death of the life beneficiary requires that this part of the fund also be distributed as in intestacy.

Reference must again be made by reason of the foregoing holdings to the direction in paragraph eleventh that the amount of the loans made by the testator was to be divided and added in equal parts to the shares passing under paragraph tenth. Since the number of these shares has been reduced from five to three because of the lapse of the gifts under subdivisions (d) and (e), two fifths of the total of loans recovered must be distributed as intestate property. (*Wright* v. *Wright*, 225 N. Y. 329.)

The court holds that the legacy in paragraph eighth is a gift to a class and passes to the surviving members.

The findings previously made establish that 40% of the distributable estate will pass as intestate property. The following persons as the distributees of deceased are entitled to participate in the distribution of that fund in the percentages indicated: Aranka Dobo, 20%; Istvan Szekac, 20%; Francis Molnar, 10%; Andrew Molnar, 10%; Erzsi Schmiedel, 20%; Olga Visontai, 20%.

Leave is granted to abandon as worthless the items described in Schedule B-1 of the account.

Submit, on notice, decree in accordance with the foregoing.