S. Samuel Di Falco, S.
In this proceeding to settle its account, the trustee has petitioned for a judicial determination of the meaning and effect of certain language used by the testator in paragraph Seventh of his last will and testament. The decedent died in 1934 and left a will which, by its terms, created a trust for the lives of his wife and his son and provided, upon the death of his son, for the distribution of two-thirds of the trust remainder to his son’s lawful issue per stirpes. In paragraph Seventh the testator provided for the distribution of the trust remainder in the event that his son died without leaving lawful issue and for the distribution of the remaining one third of the trust remainder among several persons, groups and corporations in the percentages therein set forth.
The death of the decedent’s wife in 1946 and the death of his son on June 3, 1962, without issue, makes it necessary to now determine the persons, corporations or groups to whom and to which the trust remainder is now distributable. The pertinent language of paragraph Seventh which requires interpretation reads as follows: “seventh: Should my son leave no lawful issue, then the entire principal, or should he leave lawful issue, one third of the principal, shall after the deaths of both my wife and son, be divided by my executor among the following persons, corporations or groups, in the percentage shown to each, as follows: 20% Laurel Nemeth Saunders — only, however, if my son leaves no issue by her. If that is the case, this legacy will be divided pro rata among the following ’ ’. The ambiguity is apparent. Bead literally, if the sentence beginning with the words “If that is the case ” refers to the words “ only, however, if my son leaves no issue by her ”, the testator after making a gift to his daughter-in-law in the event there were no issue of the marriage to his son, immediately nullified it by providing that the bequest to his daughter-in-law was to be divided among others, if there were no issue of the marriage to his son. The problem then is to determine whether the testator intended to make a gift to his daughter-in-law only if there were issue of the marriage to his son or whether the testator intended to make a gift to his daughter-in-law only if there were no issue of the marriage to his son.
Buies of construction are of little help in determining the true intent of this testator, but a reading of the entire will discloses the testator’s over-all testamentary plan and points the *327 way to - a solution of the problem. In paragraph Sixth the testator provided, upon the death of his son, for the distribution of two thirds of the trust remainder to his son’s issue. In paragraph Seventh the testator made many other bequests to persons and groups who were the objects of his bounty and heading this list was his daughter-in-law, Laurel Nemeth Saunders. It would appear, therefore, that although the testator wished the major portion of the trust remainder to go to his son’s issue, if there were any such issue, he also wished to make a gift to his daughter-in-law if there were no issue of the marriage to his son. It must be remembered that all of the gifts provided for in paragraph Seventh were to take effect after his son’s death. It may, therefore, have appeared logical to the testator to make a gift to his daughter-in-law upon such terms because if there were issue of the marriage to his son, such issue would, by the terms of the will, be entitled to receive two-thirds of the trust remainder and the testator wanted at least one-third of the trust remainder to be distributed among other persons and groups who were the objects of his bounty. This much at least is certain — the gift to Laurel Nemeth Saunders, only if his son left no issue by her, is clear and unambiguous. It is the language following which nullifies the gift and creates the ambiguity. Had the will stopped after the words “ issue by her ” there would be no ambiguity and since that is so the additional language will not be read as qualifying or cutting down the absolute gift unless that language is as clear and decisive as that which created the gift (Tillman v. Ogren, 227 N. Y. 495; Goodwin v. Coddington, 154 N. Y. 283; Byrnes v. Stillwell, 103 N. Y. 453 ; Matter of Gardner, 140 N. Y. 122). It is the opinion of this court that the language used by the testator after making the absolute gift is neither clear enough nor definite enough to destroy the gift first made.
A further question of construction arises by reason of the next provision in paragraph Seventh which reads as follows: “ 7%% Rev. Thomas Henry Saunders, should he then be living. ’ ’ Reverend Thomas H. Saunders survived the testator but predeceased the decedent’s son. The question present is whether the gift has lapsed and if so when the lapse occurred. Resolution of this problem can be found in the language used by the Court of Appeals in Matter of Gautier (3 N Y 2d 502, 508) wherein the court said: “ As cases very like the present demonstrate, absent language pointing a contrary intention, words of survivorship refer to the time of the testator’s death ‘ only in the case of an absolute devise or bequest to one and in case of his death to another ’; they carry no such implication where, *328 as in the will under consideration, the first devisee or legatee takes a life estate. (Mullarky v. Sullivan, 136 N. Y. 227, 231) ”. In the case at bar two life estates intervened before the gift to Rev. Thomas H. Saunders. It is obvious that the testator in making the gift and providing if “he then be living” was thinking in the future. As survivorship ivas attached as a condition to the gift and as the Rev. Thomas IT. Saunders failed to survive the life tenant, the gift has lapsed and the bequest must now be distributed as intestate property as of the date of the testator’s death.
The final question of construction arises by reason of the following language also found in paragraph Seventh which reads as follows: “ 17%% To be distributed by my executor among a group of friends whose names and percentages (with all data) will be given to him by me. I believe that loyal friends should be rewarded and this is my way of doing it. My executor shall not be called upon to account for those funds except that his oath shall be taken that he has used them as instructed by me.”
As my learned associate, Surrogate Cox, has recently had the occasion to point out in Matter of Voice (38 Misc 2d 779, 782) ‘ ‘ a gift to a fiduciary as such, fails if the ultimate testamentary purpose is to be found, not in the will, but in an extraneous paper (Reynolds v. Reynolds, 224 N. Y. 429; Fairchild v. Edson, 154 N. Y. 199) ”. (See, also, Matter of Sutta, 54 N. Y. S. 2d 572, affd. 265 App. Div. 994; Matter of Brown, 122 N. Y. S. 2d 640.) The attempt by the testator to make a gift through his executor to persons whom he would designate in a subsequent document cannot, therefore, be sustained. The foolhardiness of such attempted testamentary dispositions are pointedly made apparent in the case at bar by the fact that the executor named by the testator is now dead and no one has any information or knowledge as to the identity of the “ loyal friends ” whom the testator may have wished to benefit. As the property therein disposed of was part of the residuary estate this also must now be distributed as intestate property as of the date of the decedent’s death (Wright v. Wright, 225 N. Y. 329).