AUSTIN W. CONKLIN et al., as Trustees of the Johnsontown Methodist Episcopal Church, Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 29681.) E. R. LEACH et al., Constituting the Board of Trustees of the Newark Annual Conference of The Methodist Church, Respondents, v. STATE OF NEW YORK, Respondent. (Claim No. 30648.)

Third Department, May 19, 1954.

*Paul R. Carr* for appellants.

*Nathaniel L. Goldstein, Attorney-General (Richard H. Shepp* and *Wendell P. Brown* of counsel), for State of New York, respondent.

*Frederick H. Frey* for E. R. Leach and others, respondents.

IMRIE, J. This controversy involves the title of property in the town of Haverstraw, Rockland County, New York, conveyed on May 9, 1872, by Cortland Conklin and Margaret Jane, his wife, to four named '' Trustees of the Methodist Episcopal Church of Johnsontown.'' Between that time and 1875 a small church was constructed. In 1947 land and buildings were appropriated by the Palisades Interstate Park Commission. Notices of claim, as owners, were filed by Austin W. Conklin and two others, designating themselves as trustees of the Johnsontown church, and by the trustees of the Newark Annual Conference of the Methodist Church (hereinafter referred to as the Johnsontown church and the Conference, respectively). The claims were consolidated for trial in the Court of Claims and stipulation made that the court have jurisdiction to determine title as between the claimants. Judgment was rendered awarding $1,700 to the Conference. The Johnsontown church has appealed, contending that it is an independent church, with no surrender of control to a religious denomination and that, in any event, it is located outside the boundaries of the Newark Conference. By way of emphasis it is declared that a religious body organized before the 1875 and 1876 amendments (L. 1875, ch. 79; L. 1876, ch. 110) to chapter 60 of the Laws of ,1813, whose deed contained no clause restricting it to a denomination, was and is free to change its affiliation at will.

The Methodist Episcopal Church was organized in the United States in 1784 and continued as a separate denominational body until 1939. In that year it united with the Methodist Episcopal Church – South and the Methodist Protestant Church under the name of the Methodist Church. The record in the court below demonstrates conclusively such a relationship between the Johnsontown church and the Newark Annual Conference of the parent body from 1875 until 1946 within the church practice and discipline as to refute the claim of independence. Ministers were assigned by the Conference to the parish. Reports and

contributions were made to Conference. Prescribed Quarterly Conferences were held in the local church under the supervision of Conference representatives. It is true that, in the period from 1885 to 1925, no references to Johnsontown church appear in Conference minutes, but there is no evidence that the connection did not continue during that time. It is significant that Reverend Abram J. Conklin served as minister at Johnsontown from 1907 until his death in 1925. He was a retired minister member of the Conference and the son of the donors of its property. At times during his ministrations to the parish he attended annual sessions of the Conference as a member. Following his death the minutes show the resumption of pastoral assignments by Conference and from that time on are reasonably consecutive in demonstrating the ecclesiastical relationship until the end of the church's history.

Austin W. Conklin, one of the appellant trustees, had a substantial role in the relationship in later years. He had been licensed by the New York Conference in 1922 as a local preacher. Returning to Johnsontown he became a member of that church in 1926. In March, 1927, he received a local preacher's license from Newark Conference. Later he was licensed as a deacon and ordained as a local elder. Under the Discipline of the church he held the various offices by virtue of membership in a church subject to Conference jurisdiction. Conference appointed him minister at Johnsontown in 1935 with annual reappointments until 1945. During his ministry he attended some meetings of Conference. In that period reports of the Johnsontown church appear in the statistical records of the Conference and contributions were made to the pension fund. The court's findings in the foregoing respects and in other related matters are supported by substantial evidence.

American Methodist polity is a modified episcopacy consisting of governing legislative bodies from the Quarterly Conference in the local churches to the area annual Conference and to the quadrennial General Conference. The executive body is the Council of Bishops. This differs from the polity of Congregationalism where, traditionally, the autonomy of the local church is preserved. An independent Methodist Episcopal church (and since 1939 an independent Methodist church) cannot exist within the entity of the general body. Clearly the Johnsontown church was within the greater entity.

The deed from Cortland Conklin and wife to the trustees of the Johnsontown church implied a trust for the promulgation

of the tenets and doctrines of the Methodist Episcopal Church. "No principle is better settled than that property conveyed to trustees for the use of a church by its denominational name, as was the case here, creates a trust for the promulgation of the tenets and doctrines of that denomination." (*Ramsey* v. *Hicks,* 44 Ind. App. 490, 512, quoting *Smith* v. *Pedigo,* 145 Ind. 361, 416, and cases there cited.) That widely cited statement follows the rule of chancery in this State. (*Kniskern* v. *Lutheran Churches of St. Johns & St. Peters,* 1 Sandf. Ch. 439; *Gable* v. *Miller,* 10 Paige Ch. 627.)

The cases relied on by appellants (*Robertson* v. *Bullions,* 11 N. Y. 243; *Petty* v. *Tooker,* 21 N. Y. 267; *Watkins* v. *Wilcox.* 4 Hun 220, affd. 66 N. Y. 654) are not now authoritative. Those decisions treated incorporated religious societies as civil rather than ecclesiastical bodies, to be controlled and administered in ordinary courts of justice in accordance with common-law principles, without reference to their denominational character or condition. So viewed, control over corporate property and revenues vested in the majority of the corporation, regardless of religious tenets. The chancery rule was later accepted in chapter 79 of the Laws of 1875 providing, in part, that trustees of religious societies incorporated under section 3 of chapter 60 of the Laws of 1813 "shall administer the temporalities thereof, and hold and apply the estate and property belonging thereto, and the revenues of the same, for the benefit of such corporation, according to the discipline, rules and usages of the denomination to which the church members of the corporation belong; and it shall not be lawful for the trustees to divert such estate, property, or revenues to any other purpose except toward the support and maintenance of any religious, benevolent or other institution connected with such church, congregation or religious society." The import of the foregoing is now found in sections 5 and 16 of the Religious Corporations Law.

The trust implied in the deed resulted, regardless of the fact that the Johnsontown church was never incorporated. "Under the act of 1813 both real and personal property may be held in trust for the use of an unincorporated religious society without any restriction as to time, except that it shall terminate upon the lawful incorporation of the religious society, when, by virtue of the act, the title vests in the corporation." (*Baxter* v. *McDonnell,* 155 N. Y. 83, 94.)

In and subsequent to 1943, an investigation on the part of the Conference, through its district superintendent, revealed that

the Johnsontown church had only three active members. The Quarterly Conference could not be held there, one having been called and cancelled for lack of attendance. Concluding that the church had been abandoned, the district superintendent offered a resolution at the 1946 session of Conference for the abandonment thereof and the disposal of its property. It is said that Austin W. Conklin was present, asking for continuance of the work but making no claim that Conference lacked jurisdiction over the property. The resolution was approved according to the requirements of the Discipline and of section 16 of the Religious Corporations Law, as applying to Methodist churches. Thereunder, if an incorporated religious governing body (as is this Conference) duly determines a church to be extinct, it may sell or dispose of the church property " and apply the proceeds thereof to any of the purposes to which the property of such governing religious body is devoted, and it shall not divert such property to any other object."

The contention as to a possible conflict of jurisdiction between Newark Annual Conference and New York Annual Conference is without merit. If Johnsontown is within the precise boundaries of the latter Conference, it has provided a borderline case wherein jurisdiction has been exercised by Newark Conference. A resolution said to have been offered at the 1947 New York Annual Conference at the request of Mr. Conklin was subsequently withdrawn for lack of jurisdiction.

The judgment should be affirmed, without costs.

FOSTER, P. J., BERGAN and COON, JJ., concur.

Judgment affirmed, without costs.