Thomas E. Morrissey, Jr., J.
This is an action brought to construe and enforce an agreement which was entered into on September 29, 1921 between Louis Stolitzky and Congregation Bnai Jacob, hereafter referred to as the “ Congregation ”. The Congregation Bnai Jacob on January 5, 1942 by order of this court consolidated with the plaintiff, the Congregation Bnai Jacob-Tifereth Israel. The plaintiff alleges that on December 21,1921 Louis Stolitzky donated $10,000 to the plaintiff pursuant to the agreement. The agreement in substance provides that the $10,000 was given to the Congregation to be held as a separate fund to be known as the “Free Loan Fund” and to be used only for the purpose of loans to “worthy applicants” repayable without any interest and the fund was to be kept in a separate bank account and banking institution. The gift agreement further provided that the $10,000 was to be administered by a committee of 15 members of the synagogue and also named 15 individuals to constitute the committee. Two other named individuals, the son of Louis Stolitzky, Milton Stolitzky, and Isidore Taub were named as the individuals who were authorized to sign the checks. The agreement contained a direction that the *56 committee was to apply for incorporation. It concluded with the proviso that if the committee misapplied the fund, then a new committee may be appointed with the approval of Louis Stolitzky.
The complaint further alleges that 11 of the 15 committeemen have died, one has left the State and the remaining 3 are parties defendants herein, namely, Milton Stolitzky, Isidore Taub and Grus Handing. The complaint further states that no incorporation was obtained by the committee but the committee to date has made loans out of the funds. The plaintiff synagogue further alleges that it did appoint new members of the committee from among members of its congregation but that Milton Stolitzky, a check-signing member of the original committee, refuses to act or sign checks for loans authorized by the reconstituted committee.
The answer of the defendant Milton Stolitzky in a separate defense and counterclaim contends that the plaintiff synagogue is not the one to which the gift was given. The answer also contends that the gift agreement contains no provision for reconstituting the committee of 15 by filling vacancies. The answer concludes by asking the court to find that the continuance of the committee is impracticable and to cy pres the fund to a competent corporate charity, such as the Hebrew Free Loan Society, Inc., for administration-pursuant to the terms of the gift.
The Attorney-General in his answer prays for an accounting by those in possession of the special fund.
The important question for the court to decide in this case is what disposition should be made of the funds in question. The congregation which was a party to the agreement is the original Congregation Bnai Jacob and not the plaintiff religious corporation which came into being from a consolidation taking place almost 21 years later. When the fund was donated by the donor to the Congregation donee there were limiting conditions immediately following the agreement that established that the Congregation was intended to serve merely as a conduit for the transfer of the fund at the earliest possible date to a corporation which was to possess, own and administer the fund for the stated purposes of the trust, namely, “Free Loan Associates of Congregation Bnai Jacob ”. Moreover, the Congregation was obligated, upon accepting the donation, to see to it that the provisions of the agreement, including the provision whereby it lost all interest or relationship to the fund through the formation of the corporation and through transfer to it of the asset, was carried out without delay.
*57 The first condition upon which the fund was donated is found in subdivision “(a)”, paragraph “1st ”, where it is directed that the money was to be placed in a separate fund to be known as “ Congregation Bnai Jacob Free Loan Fund, founded by Louis Stolitzky ’ ’ and was to be used for the purposes of being loaned out to worthy applicants who were to repay the loans without interest.
Subdivision “(a)” of paragraph “1st” of the agreement concludes with the following language: “it being understood that no part of said moneys shall at any time be commingled with the funds of the Congregation, but shall be kept in a banking institution other than the one in which the Congregation may have an account.” (Italics supplied.)
Subdivision “ (b) ” of paragraph “ 1st ” of the agreement sets forth an additional condition of the donation that the fund be administered by a committee of 15 members of the Congregation. These 15 are named in the agreement and are given ‘ ‘ full power to make all rules and regulations that may be necessary for the purpose of governing, controlling, maintaining, conducting and administering said fund.” The court concludes as to this that the fund was never actually received by the Congregation but was given by Louis Stolitzky directly to the committee of 15. Finally, neither in subdivision “(b)” of paragraph “ 1st” of the agreement in which the committee of 15 was nominated or in any other paragraph was provision made for the filling of vacancies in its membership or the appointment of successors.
Subdivision “(c)” of paragraph “ 1st ”, a further condition of the donation, reads as follows: “(c). That all moneys that may be expended in the administration of the said fund shall be upon checks to be countersigned by Milton Stolitzky and signed by Isidore Taub.”
Of the 15 original members of the committee only 3 now survive, 11 having died and 1 having removed from the State of New York. The two persons designated by the agreement as required signatories for the checks are found among the three survivors, for in respect to successor signatories the agreement is silent, as it is in regard to the manner of choosing successors to the committee members themselves. The court concludes that this was no oversight on the part of the parties to the agreement that the provision was omitted for the appointment of successors. Rather it was the intent of the parties that the committee was to function for as brief a period as possible until the formation of a corporation which would take over both the assets and the function of the committee.
*58 At the present time the court finds that it is impracticable to comply with the express direction contained in paragraph ‘ ‘ 1st (d) ” for the incorporation by legislative act of such association. It is now 35 years after the execution of the agreement, 23 years after the death of Louis Stolitzky, who was required by the agreement to join with the committee of 15 in the application for a charter, and 14 years after the Congregation ended its existence by consolidation with another congregation, giving, up simultaneously its own temple and moving into the quarters of such other corporation; and now at a time when only 3 of the original 15 committeemen survive and without provision in the agreement for the appointment o'f successors, the plaintiff, at most a successor to the interest of the Congregation in the agreement, demands possession and title to the fund and suggests at the same time that the corporation which was to be promptly formed in 1922 may yet be formed in 1956.
Section 12 of the Personal Property Law vests in the Supreme Court the requisite power to enable it to act in this case. The first unnumbered paragraph of subdivision 1 of the section reads as follows: “1. No gift, grant or bequest to religious, educational, charitable or benevolent uses, which shall in other respects be valid under the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If in the instrument creating such a gift, grant or bequest there is a trustee named to execute the same, the legal title to the property given, granted or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee then the title to such property shall vest in the supreme court.” (Emphasis supplied.)
Subdivision 2 o'f section 12 of the Personal Property Law states: “ 2. The supreme court shall have control over gifts, grants and bequests in all cases provided for by subdivision one of this section, and, whenever * * * [changed circumstances render] impracticable or impossible a literal compliance with the terms of such instrument, the court may, upon the application of the trustee or of the person or corporation having custody of the property, and upon such notice as the court shall direct, make an order directing that such gift * * * shall be administered * * * in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument, without regard to and free from any specific restriction”. (Emphasis supplied.)
The court is of the opinion that the cy pres doctrine should be applied to the situation existing in this case. In Corpus *59 Juris Secundum (Vol. 14, Charities, p. 512, § 52) is the following note:
“ a. Definition and Nature.
‘ ‘ Cy pres means ‘ as near to, ’ and the doctrine is one of construction, the reason or basis thereof being to permit the main purpose of the donor of a charitable trust to be carried out as nearly as may be where it cannot be done to the letter.
‘ ‘ Cy pres has been defined or translated as meaning 1 as near as may be,’ and literally it means ‘ as near to.’
“ The doctrine of cy pres is the doctrine of nearness or approximation, and, as modified and applied by some courts in the United States, has been called the doctrine of approximation, although in some jurisdictions * * * the doctrine of approximation has been held not to take the place of, nor to be the same as, the cy pres doctrine. However, the equity doctrine of approximation and that of cy pres are both said to be in reality judicial principles of construction and not of administration, the construction not being the result of an arbitrary power exercised in disregard of the donor’s wishes for the public benefit, but being based on a judicial finding of his intention as applied to new conditions. The meaning of the doctrine of cy pres is that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced, and the reason or basis for the doctrine is to permit the main purpose of the donor of a charitable trust to be carried out as nearly as possible where it cannot be done to the letter.”
In Lutheran Hosp. v. Goldstein (182 Misc. 913, 917) the court said: “It is well-established law that cy pres is a doctrine of approximation; that it is basically a rule of judicial construction ; that its design and purpose are to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor. ’ ’ Therefore, the court concludes that the purpose of the donor would be best carried out by transferring the fund now being held by the banks who have been named as parties defendants, to the Hebrew Free Loan Society, located at 108 Second Avenue, New York City, which has signified a willingness to serve. The fund is to be administered pursuant to the terms of the gift.
The court is further of the opinion that an accounting is not necessary in this case and that the transfer of the funds shall be done without this.
Submit judgment and findings on notice.