Anthony P. Savarese, S.
Rosalie Sanders died on March 27, 1956, leaving a last will and testament executed on June 14, 1955 and which was admitted to probate by this court on August 6, 1956, on which date letters testamentary were issued to the petitioner as the executor named in said will. By paragraph Fifth of her will the deceased purported to dispose of her shares in a mutual investment company, consisting at her death of 166 shares valued at approximately $6.11 per share and representing’ somewhat less than one third of the estate before the payment of debts and funeral expenses. The Fifth paragraph divided the shares in question into three equal parts to be distributed as follows: ‘ ‘ one such part or share, or, at the option of the charitable organization hereinafter named as the distributee thereof, the proceeds of such part or share, to Home and Hospital of the Daughters of Jacob, The Betty Goldsmith Home for Crippled Children, and The New York Association for the Blind (The Lighthouse), respectively.”
*801 Petitioner seeks a determination as to the validity, construction and effect of the disposition under paragraph Fifth due to his inability to pay the bequest to The Betty Goldsmith Home fob Crippled Children. The Attorney-General as the representative of the ultimate, indefinite and uncertain beneficiaries of gifts, etc., for religious, educational, charitable or benevolent uses prays that this court exercise the cy pres power for the benefit of charitable beneficiaries as conferred by subdivision 2-a of section 12 of the Personal Property Law as added by chapter 715 of the Laws of 1953.
The facts, as ascertained by the petitioner, with regard to the intended beneficiary are as follows: No evidence of the existence, past or present, of an organization known as The Betty Goldsmith Home for Crippled Children could be discovered. However, an institution known as The Evelyn Goldsmith Home for Crippled Children was founded in the year 1911. Petitioner believes this to be the institution which decedent intended when she designated The Betty Goldsmith Home as a beneficiary under her will. Said Evelyn Goldsmith Home was reorganized and incorporated under the laws of this State in 1943 as the Beach Haven Convalescent Home for Cardiac Children Incorporated (Evelyn Goldsmith Memorial). For several years the latter organization operated a home in the Rockaways where it provided convalescent care for boys from 6 to 14 years of age recovering from the acute phases of rheumatic fever. In or about 1950, however, these activities were discontinued and a proceeding to effect its dissolution was commenced in the Supreme Court held in Queens County which was terminated by the entry on April 15, 1952 of an order discharging the corporation’s directors as trustees in liquidation. It does not appear that any corporation was specified therein as successor of the dissolved corporation under subdivision 5 of section 56 of the Membership Corporations Law. Distribution of the assets of the dissolved corporation was directed to nine charitable organizations in specified percentages.
Assuming, as the petitioner does, that The Evelyn Goldsmith Home for Crippled Children or its successor was the institution intended in testatrix’ bequest to The Betty Goldsmith Home for Crippled Children, the court may for purposes of discussion group this among the class of cases wherein a bequest is made t,o a charitable organization which has ceased to exist at the effective date of the gift. Prior to the enactment of chapter 715 of the Laws of 1953, the controlling line of decisions in such *802 eases held that a gift to a charitable corporation lapsed if the corporation had dissolved before the gift took effect. (Wright v. Wright, 225 N. Y. 329; Matter of Walker, 185 Misc. 1046; Matter of Joseph, 62 N. Y. S. 2d 197; Matter of O’Hanlon, 147 Misc. 546.) In Matter of Walker (supra, p. 1057) wherein a power of appointment was exercised by a will appointing* a corporation which had dissolved seven years earlier, the court said: “ The named legatee had no legal existence at the time of the donee’s death. The legacy could never vest or take effect, and legally and actually lapsed. The rule is settled that where a legacy has lapsed, the doctrine of cy pres cannot save the gift.”
The courts of this State were able to apply the doctrine of cy pres in cases distinguishable in that the beneficiaries were in existence but not operating on the ground that the legacies involved had not lapsed (Matter of Walter, 150 Misc. 512), and where an existing legatee declined the gift on the ground that it was impractical to carry out the same. (City Bank Farmers Trust Co. v. Arnold, 283 N. Y. 184.) The cy pres power was also invoked when the donee ceased its activities after the vesting of a gift. (Sherman v. Richmond Hose Co., 230 N. Y. 462.)
However, the courts would not exercise the cy pres power for the validation of gifts to charitable organizations not in existence at the death of the testator until the addition of subdivision 2-a of section 12 of the Personal Property Law and subdivision 2-a of section 113 of the Real Property Law by chapter 715 of the Laws of 1953. (See N. Y. Legis. Doc., No. 65 [S]; Matter of Westheimer, 124 N. Y. S. 2d 784.) Subdivision 2-a insofar as relevant here gives to this court the power by the application of the doctrine of cy pres to prevent the defeat of a charitable gift by reason of the fact that “ the donee, grantee or legatee does not exist or lacks capacity to take at the time the gift, grant or legacy would otherwise become effective ”.
Whether testatrix’ intended beneficiary never existed at all or ceased to exist prior to her death, the instant cases clearly come within the purview of this statute. In the Westheimer case (upra, p. 786), where it was held that a gift to a nonexistent donee must lapse, the court stated that a contrary decision would be indicated had the decedent therein died after September 1, 1953, the effective date of the amended statute.
From a reading of the will disposing of a substantial portion of the estate to three charitable organizations, it is evident *803 that testatrix had the general charitable intent which is prerequisite to the exercise by a court of the doctrine of cy pres. (See Matter of Dillenback, 189 Misc. 538, affd. 273 App. Div. 1051; Matter of Merritt, 280 N. Y. 391.)
Since it appears that testatrix was primarily concerned with the care of the infirm and in view of the modest amount involved, the Surrogate determines that her intentions may best be accomplished by the division of the share bequeathed to the nonexistent Betty Goldsmith Home equally between the remaining two charitable legatees mentioned in paragraph Fifth. Submit decree construing the will accordingly, on notice.