George W. Pratt, S.
On March 19, 1930, Leon L. Hough died leaving his widow, Anna Hough. His will was duly probated in 1930 in which he set up a trust with income payable *185 to his wife for life with power of invasion of the principal. After her death the trust Avas to continue with income to other relatives, all of Avhom predeceased the wife. The invasion of principal resulted in a depletion of the then known assets of the estate and a final judicial settlement was approved on December 17, 1956, all assets then known being exhausted. L„ November, 1956 she AA?as furnished welfare assistance by Steuben County until her death on March 19,1957, in the sum of $679.06. Upon the widow’s death there was discovered among her papers an insurance policy on the life of Leon L. Hough, which had been paying her small monthly interest payments on a principal sum of $6,873.50, which sum the substituted trustee procured from the insurance company for testator’s estate and now brings on this proceeding for supplemental accounting and to determine the validity of paragraph ninth of the will which reads as follows:
“ Ninth — At the termination of the trust, I give, devise and bequeath all of my estate then remaining, both real and personal and wherever situate, equally share and share alike, in fee forever to the following institutions: (a) The Hornell Rotary Fresh Air Camp, Inc. of Hornell, N. Y., (b) The Hornell Children’s Home, Inc. of Hornell, N. Y., (c) The Bethesda Hospital of Hornell, N. Y., (d) The Steuben Council of Boy Scouts of America of Steuben County N. Y., (e) the Anderson Health Home of Canisteo, N. Y.”
Since the discovery of this asset, the Steuben County Welfare Department has filed a claim under section 104 of the Social Welfare Law for $679.06 against this estate and the Williams Funeral Home has filed a claim against this estate for $677.50, for the funeral in 1957 of the Avidow of this decedent. The parties have stipulated that the Hornell Rotary Fresh Air Camp, Inc. ceased to exist in 1948 and that the Anderson Health Home of Canisteo, N. Y., ceased to exist in 1942.
There is no provision or intent in the Avill which would justify the alloAvance of the funeral director’s claim for the widow’s funeral against the husband’s estate and that claim is therefore denied.
Under the testator’s will the residue of his estate vested immediately in the five charitable organizations set forth in paragraph ninth of the will contingent on whether they could qualify at the time of distribution when the trust was completed. At the time of the probate and before setting up the trust provided for in paragraph eighth, all known debts were fully paid as set forth in an accounting duly filed.
*186 As to the County Welfare Department’s claim we start with the premise that liability for public assistance furnished others can be created only by statute. So far as discoverable, it was unknown at common law.
The present pertinent provisions of the Social Welfare Law were derived without change from the former Public Welfare Law. The present sections only are here referred to.
Section 101 of the Social Welfare Law makes a husband liable for public assistance furnished his wife. But nothing is mentioned as to the husband’s estate being liable therefor. Subdivision 1 of section 104 of the Social Welfare Law, which implements the said section 101, must be considered, and reads as follows:
‘ ‘ § 104. Recovery from a person discovered to have property.
“ 1. A public welfare official may bring action against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such assistance or care. Any public assistance or care received by such person shall constitute an implied contract. No claim of a public welfare official against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, shall be barred or defeated, in whole or in part, by any lack of sufficiency of ability on the part of such person during the period assistance and care were received.” (As amd. by L. 1953, ch. 838, eff. April 19, 1953.)
In section 104, the words “ during the preceding ten years ” are construed to refer back to the word 1 ‘ dies ’ ’ and relate to any assistance furnished in the 10 years immediately preceding the death of the person liable, viz., 10 years prior to March 19, 1930, date of testator’s death.
The county’s claim is therefore denied.
The next question is, how shall the two-fifths share of the residue which was to go to the now defunct Hornell Rotary Fresh Air Camp, Inc. and the Anderson Health Home of Canisteo, New York, be disposed of?
The attorneys for the three remaining charities claim the gift does not lapse but rather cy pres should be invoked and the entire residue should be distributed equally among the three remaining charities.
*187 The special guardian for unknown heirs claims the two-fifths shares lapsed and to distribute under cy pres would be a residue of a residue which is barred under stare decisis, and the two fifths should be distributed as intestate property.
The attorneys for the three charities maintain that it was the clear intention of the testator to leave his entire residuary estate to charity. But they have lost sight of the primary intention of the testator, which was to care for his wife, even to his last dollar. From this care for his wife it is inconceivable testator should ever want her to be the object of unpaid public assistance.
That he could not have foreseen the rise in the cost of living since 1930 is not unusual. He evidently thought his estate of more than $40,000 plus $5,000 life insurance payable to the widow was sufficient to pay the few legacies and care for her needs during the rest of her life, and that the $6,873.50 principal of the annuity life insurance policy, which is here in question, would at least leave something for the five charities in paragraph ‘1 Ninth ’ ’ of his will. The charities were thus his secondary, rather than primary, consideration.
In Lutheran Hosp. v. Goldstein (182 Misc. 913), it was held that cy pres should not be carried to such an extent that the deviation will destroy the testamentary intention; that it is a doctrine of approximation; is basically a rule of judicial construction; its design and purpose is to aid the court to ascertain and carry out as nearly as may be, the intention of the donor.
Cy pres has been defined “ as near as may be ” or “as near to ”. (Congregation Bnai Jacob v. Stolitzky, 3 Misc 2d 54, 59.)
It is intended to effectuate the general charitable purpose of a testator when his particular or specific intention cannot be carried out, and it is an aid to fulfill testator’s design as nearly as possible. (Matter of Clark, 1 Misc 2d 869.)
The cy pres power has been invoked when the donee ceased its activities after the vesting of a gift. (Sherman v. Richmond Hose Co., 230 N. Y. 462.)
But prior to the enactment of chapter 715 of the Laws of 1953 (Personal Property Law, § 12, subd. 2-a), where a bequest is made to a charitable organization which has ceased to exist at the effective date of the gift, “ the controlling line of decisions in such cases held that a gift to a charitable corporation lapsed if the corporation had dissolved before the gift took effect.” (Matter of Sanders, 7 Misc 2d 800, citing Wright v. Wright, 225 N. Y. 329; Matter of Walker, 185 Misc. 1046; Matter of Joseph, 62 N. Y. S. 2d 197; Matter of O’Hanlon, *188 147 Misc. 546.) To the same effect, Surrogate Frankenthaler held in Matter of Scott (1 Misc 2d 206).
The court considers Wright v. Wright (supra) to be controlling, the decedent having died prior to 1953, viz., 1930. And there can be no residue of a residue here.
In the court’s discretion, cy pres is not invoked. The two-fifths residuary shares of the defunct beneficiaries must go as intestate property.
Decree accordingly.