New York District of the Assemblies of God et al., Respondents, v Calvary Assembly of God et al., Appellants.

Third Department, November 9, 1978

312

APPEARANCES OF COUNSEL

*David C. Gibbs, Jr.,* and *James E. Cullum* for appellants.

*John W. Helfrich (Gordon K. Garlick* of counsel), for respondents.

**OPINION OF THE COURT**

GREENBLOTT, J.

The New York District of the Assemblies of God (New York District) is a religious corporation covering 202 Assembly of God churches in New York, and represents the General Council of the Assemblies of God (General Council), a national organization with headquarters in Springfield, Missouri. New York District, together with seven members of the defendant Calvary Assembly of God (Calvary), a church located in Glens Falls, New York, commenced this action for a declaratory judgment against Calvary and its trustees. Plaintiffs allege that Calvary is subject to the ecclesiastical hierarchy of the Assembly of God denomination, and that Calvary's pastor and its trustees have attempted to illegally transfer Calvary's property to a new, independent and autonomous church. Defendants contend that notwithstanding Calvary's affiliation with the General Council and the New York District, Calvary has the right to withdraw from the Assemblies of God denomination because it is a sovereign and independent church.

In March of 1942 Calvary incorporated under article 10 of the Religious Corporations Law. Following its incorporation, the General Council granted Calvary's application to become affiliated with it, thereby recognizing Calvary as one of the local assemblies in "co-operative fellowship" with the General Council. Until 1974, Calvary maintained a relationship with both the General Council and the New York District, contributing financially to their various programs. A majority of Calvary's members voted to sever its relationship with the

Assembly of God because of a doctrinal dispute with the General Council. The majority also voted to create a successor church, the Faith Bible Church, which was incorporated under article 8 of the Religious Corporations Law. Since the incorporation of the Faith Bible Church, its members have continued to occupy and use the real and personal property of Calvary, incurring debts and collecting money without recognition of or payment to the State or national bodies.

The issue is whether the New York District, as representative of the General Council, exercises such hierarchical control over Calvary that the latter's assets cannot be transferred to another church. As we said in *Matter of Presbytery of Albany (Second United Presbyt. Church of Johnstown,* 35 AD2d 252, 253-254, affd 28 NY2d 772, app dsmd 404 US 803), "[r]eligious organizations may generally be categorized as congregational or hierarchial *[sic]*, depending upon the basis of the governing power." A congregational church has been defined as "an independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government." (See *Knight v Presbytery of Western N. Y.,* 26 AD2d 19, 21, affd 18 NY2d 868.) On the other hand, "[h]ierarchical churches may be defined as those organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head" *(Kedroff v St. Nicholas Cathedral,* 344 US 94, 110). Our decision in *Matter of Presbytery of Albany (Second United Presbyt. Church of Johnstown) (supra)* as to whether the Johnstown Presbyterian Church was either congregational or hierarchical was based on an examination of the constitution and regulations of the United Presbyterian Church in the United States and the history of the relationship between the Johnstown church and its alleged overseer in the scheme of the protestant hierarchy, the Albany Presbytery. We also relied upon historical factors in *Conklin v State of New York* (284 App Div 193) in determining whether a local church in that case was congregational or hierarchical.

The complexities of resolving this question are well stated in New York Jurisprudence (vol 49, Religious Societies, § 8): "When investigating the law relative to religious societies and corporations, it is well to keep in mind the fact that churches and other religious societies are of many kinds and denominations, varying in the type or degree of their formal organiza-

tion, as well as in their independence of or degree of connection with a particular general or central church or denominational organization. Under some systems each church or religious society is an independent body, with a congregational form of government, not subject to the control of any higher ecclesiastical judicature, but a law unto itself, and self-governing in its religious functions; under other systems a local church is but a member of a larger and more important religious organization, and is under its government and control."

■ In granting summary judgment, Special Term concluded that by incorporating under article 10 of the Religious Corporations Law, Calvary acknowledged that it was "denominational and not a congregational" or independent church. We do not agree. The mere act of incorporating under article 10 was not determinative of the issue of whether Calvary was independent or hierarchical. Special Term reasoned that if Calvary intended to become an independent church it would have incorporated under article 8. We find no support for this conclusion. An examination of article 8 of the Religious Corporations Law reveals that it applies only to the "Congregational" or "Independent" church of which denomination Calvary is not a member. Special Term erred in reading the words "Independent church" in article 8 (spelled with an initial capital letter "I") to mean independent church in the sense that it was not connected to a parent body.*

■ Special Term further held that "[t]he active involvement and participation of the defendant church in the ecclesiastical and spiritual activities of the parent structure is further evidence of its recognition of the authority and jurisdiction of the Assemblies of God denomination according to the hierarchial [sic] scheme." We do not agree with this conclusion. Mere involvement of Calvary in the ecclesiastical affairs of the General Council and New York District does not necessarily subject Calvary to the control of that body insofar as its property matters may be concerned. Acknowledgment of a higher church authority may be limited to ecclesiastical authority and therefore not inconsistent with local autonomy in property matters (see *Matter of Presbytery of Albany [Second*

---

* Section 11 of chapter 900 of the Laws of 1972, effective September 1, 1972, provides that article 8 applies "only to churches of the United Church of Christ, Congregational Christian churches, whether or not part of the United Church of Christ, and Independent churches."

*United Presbyt. Church of Johnstown]*, 35 AD2d 252, affd 28 NY2d 772, app dsmd 404 US 803, *supra)*. It is not only the extent of the involvement which must be studied but the extent to which the parent body controls the affairs of the local church.

Upon the record before us, we cannot determine whether the extent of Calvary's involvement and participation in the ecclesiastical and spiritual activities of the parent structure was such as to subject it to the hierarchical control of the New York District.

The opposing affidavits, as well as the other documentary evidence in the record, present conflicting views which raise substantial fact questions requiring a trial.

The order should be reversed, on the law, without costs, and the motion denied.

MAHONEY, P. J., KANE and STALEY, JR., JJ., concur; MAIN, J., dissents and votes to affirm on the opinion of AMYOT, J., at Special Term.

Order reversed, on the law, without costs, and motion denied.